**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 04-4060**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL RAY NICHOLS,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, Chief District Judge. (CR-01-215-MU)

Submitted: August 3, 2005        Decided: September 14, 2005

Before NIEMEYER, TRAXLER, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. R. Alexander Acosta, Assistant Attorney General, Jessica Dunsay Silver, Karen L. Stevens, Karl N. Gellert, DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Michael Ray Nichols was convicted of conspiracy to violate civil rights, 18 U.S.C. § 241 (2000), and two counts of interfering with housing rights, 42 U.S.C. § 3631(a) (2000). He was sentenced as a career offender to three concurrent 110-month terms and was ordered to pay restitution of $11,646.91. Nichols now appeals. We affirm.

I

Nichols was a friend of Shane Greene, a longtime resident of a neighborhood in Bessemer City, North Carolina. Greene and his friends resented the fact that Hispanics and African-Americans had begun integrating the formerly all-white neighborhood. Several witnesses testified that they heard Greene and his friends, including Nichols, scream racial epithets at Hispanics and African-Americans who lived in the neighborhood. Wilson testified that Nichols and Greene had ongoing discussions about their dislike of having "niggers" and "spics" living in Bessemer City.

Julio Sanchez testified that on the evening of July 30, 1999, he and a friend were sitting on the friend's front porch when two of the men who previously had yelled epithets at them came up on the porch. One man punched his friend in the face. The other man attempted to hit Sanchez. The men left, but later returned

with something in their hands.  Screaming, the men broke windows of trucks parked outside the house as well as windows of the house.

Martha Sellers, who lived across the street, witnessed the incident.  She identified the perpetrators as Greene and the defendant, Michael Nichols.  Lois Wilson, who lived nearby with Greene's uncle, testified that she saw Nichols and Greene going down the street with a bat and an iron pipe yelling such things as, "Go back to Mexico.  You done got all our damn jobs."  Wilson described the scene as "bedlam" and Greene and Nichols as "savages. . . destroying those guys' vehicles, destroying the windows and doors in their house, petrifying them, screaming and hollering and cussing."

Milton Taylor testified that he returned to his home in the neighborhood on May 31, 1999, only to find that he did not have his key with him.  He saw two men whom he did not recognize running down the street toward him.  Taylor was afraid and ran, but the men caught him, tackled him, and kicked and punched him.  The assault lasted approximately two minutes.  Taylor suffered a bruised face and a sore side and shoulder.

Wilson testified that Greene and Nichols expressed their intention to teach the Taylor family "a lesson" and that they intended "to kick their ass."  After an incident involving Taylor, Greene and Nichols laughed about "how [they] had kicked his ass."  Wilson did not witness the incident, but she knew that Greene and

Nichols were speaking of the Taylor family because they were pointing toward the Taylor home.

Nichols' version of the Taylor incident was that Taylor came around the side of his house, "a few statements" were made, and Greene and another man attacked Taylor. Nichols testified that he broke up the scuffle, escorted Taylor to the door, and told the woman who answered the door to keep Taylor inside because Greene was drunk.


II

Nichols first claims that the evidence was insufficient to sustain his conviction on Count II, which charged him with interfering with Milton Taylor's housing rights, in violation of 42 U.S.C. § 3631(a). "'To establish a violation of § 3631(a), the Government must prove beyond a reasonable doubt that the defendant acted with the specific intent to injure, intimidate, or interfere with the victim because of [his] race and because of the victim's occupation of [his] home.'" United States v. Whitney, 229 F.3d 1296, 1303 (10th Cir. 2000) (quoting United States v. McInnis, 976 F.2d 1226, 1230 (9th Cir. 1992)).

A defendant challenging the sufficiency of the evidence "bears a heavy burden." United States v. Beidler, 100 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks and citation omitted). To determine if there was sufficient evidence to support

- 4 -

a conviction, we consider whether, taking the evidence in the light most favorable to the Government, substantial evidence supports the jury's verdict. Glasser v. United States, 315 U.S. 60, 80 (1942). We review both direct and circumstantial evidence and permit "the [G]overnment the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Witness credibility is within the sole province of the jury, and we will not reassess credibility. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).

Here, there was sufficient evidence to convict Nichols on Count Two. First, Nichols clearly despised having Hispanics and African-Americans living in the neighborhood. He and Greene frequently directed racial epithets at their non-white neighbors, and Wilson testified that the men had frequent conversations during which they expressed their opinion that only whites should live in their neighborhood and, for that matter, in Bessemer City.

Second, Nichols placed himself at the scene of the assault on Taylor, although he denied being one of the assailants. Third, Wilson testified that Nichols and Greene had spoken about how they were going to teach the Taylor family a lesson and that they later pointed at the Taylor home and laughed about how they had "kicked his ass." Given these facts, a jury could have concluded that Nichols stated his intent to harm Taylor, assaulted

him on May 31, and subsequently boasted about the assault. Clearly, there was sufficient evidence upon which the jury could have concluded that Nichols assaulted Taylor with the specific intent to injure or intimidate him because he was an African-American man living in what Nichols perceived as a white man's neighborhood.

## III

Nichols also contends that the district court erred when it refused his request that the jury be given a lesser-included offense instruction on Count Two. Section 3631(a) provides for imprisonment of up to one year if the victim suffers no bodily injury; the penalty increases to a maximum of ten years if bodily injury results. 42 U.S.C. § 3631(a). Nichols argued that a verdict of guilty on Count Two would create a sentencing problem under Apprendi v. New Jersey, 530 U.S. 466 (2000), because the court would not know whether the jury had found him guilty of the lesser offense.

The prosecutor responded that the indictment charged Nichols with violating the statute by assaulting Taylor, "resulting in bodily injury," and that there would be no Apprendi problem. The only two choices for the jury, then, were guilty of the more serious crime, or not guilty; it was not possible for the jury to find Nichols guilty of the less serious offense. The district

court agreed with the prosecutor and refused to give the instruction.

We review a district court's decision whether to give a jury instruction for abuse of discretion. <u>United States v. Kennedy</u>, 372 F.3d 686, 698 (4th Cir. 2004). Refusal to give a requested instruction is error only if (1) the instruction was correct; (2) it was not "substantially covered by the court's charge to the jury;" and (3) failure to give the instruction "seriously impaired the defendant's ability to conduct his defense." <u>United States v. Patterson</u>, 150 F.3d 382, 388 (4th Cir. 1998).

"A defendant is not entitled to a lesser-included offense instruction as a matter of course." <u>United States v. Wright</u>, 131 F.3d 1111, 1112 (4th Cir. 1997). "In order to receive a lesser-included offense instruction, 'the proof of the element that differentiates the two offenses must be sufficiently in dispute that the jury could rationally find the defendant guilty of the lesser offense but not guilty of the greater offense.'" <u>Id.</u> at 1112. Here, the distinguishing element was bodily injury. There was absolutely no dispute that Taylor sustained bruises and soreness following the May 31 assault.

Nichols' presentence report assigned him a base offense level of 24 because he had two prior felony convictions of either a crime of violence or a controlled substance offense, meaning that he was a career offender.  See U.S. Sentencing Guidelines Manual § 2K2.1(a)(2) (2004).  He contends on appeal that career offender status, as well as all criminal history calculations, are factual matters that, under Blakely v. Washington, 542 U.S. 296 (2004), must be charged in the indictment and proven to the jury beyond a reasonable doubt.  Further, he contends for the first time that the district court's order that he pay restitution also violated the Sixth Amendment under Blakely and United States v. Booker, 125 S. Ct. 738 (2005).

In both Booker and Blakely, the Supreme Court reaffirmed its holding in Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998), that the fact of a prior conviction need not be proven to a jury beyond a reasonable doubt.  Booker, 125 S. Ct. at 756; Blakely, 542 U.S. at ___, 124 S. Ct. at 2536.  Here, the record is clear on its face, and Nichols does not contest, that he has the two prior felony convictions that qualify him for career offender status.[*]  He was sentenced in 1991 to two years in prison upon a

---

[*]We note that, for purposes of U.S. Sentencing Guidelines Manual § 2K2.1 (2001), "felony conviction means a prior adult . . . conviction for an offense punishable by . . . imprisonment for a term exceeding one year, regardless of whether such offense is . . . designated as a felony and regardless of the actual sentence

plea of guilty to misdemeanor assault inflicting serious injury, in violation of N.C. Gen. Stat. § 14-33, and in 1991 to twelve months in prison for assault on a law officer, in violation of N.C. Gen. Stat. § 14-33(b)(4).

Nichols also contends that, under Booker, the jury, rather than the district court, should have set the amount of restitution. Booker, Blakely, and Apprendi do not affect the manner in which restitution is ordered. See United States v. Swanson, 394 F.3d 520, 526 (7th Cir. 2005); United States v. DeGeorge, 380 F.3d 1203, 1221 (9th Cir. 2004); United States v. Wooten, 377 F.3d 1134, 1144 n.1 (10th Cir.), cert. denied, 72 U.S.L.W. 3297 (U.S. Nov. 15, 2004).

V

We accordingly affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

imposed." USSG § 2K2.1, comment. (n.1). The offenses here were punishable by imprisonment of more than one year.